IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


KAVETSKAYA V. BURGOON


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


YELIZAVETA KAVETSKAYA, APPELLANT,

V.

RANDELL L. BURGOON, APPELLEE.


Filed October 1, 2019.    No. A-18-1139.


Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Dana M. London for appellant.

Terrance A. Poppe and Anne E. Brown, of Morrow, Poppe, Watermeier & Lonowski, P.C., L.L.O., for appellee.


RIEDMANN, BISHOP, and ARTERBURN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Yelizaveta Kavetskaya appeals from the order of the district court for Lancaster County dissolving her marriage to Randell L. Burgoon, approving the parties' property settlement and parenting plan, and ordering Kavetskaya to pay alimony of $700 per month for 8 years. On appeal, Kavetskaya challenges only the court's order of alimony. Upon our de novo review of the record, we find no abuse of discretion by the district court and affirm its decision.

## BACKGROUND

Kavetskaya and Burgoon were married in 2001 in Moscow, Russia. Two children were born during the marriage, and Burgoon adopted Kavetskaya's daughter, who was born prior to the marriage. Kavetskaya filed a complaint for dissolution of marriage in May 2017. At the time she filed for divorce, Kavetskaya was 39 years old and Burgoon was 64 years old. The parties reached

a settlement agreement regarding property distribution, child custody, and child support. The couple agreed to share legal and physical custody of the children with a week-on/week-off parenting schedule, and Kavetskaya agreed to pay Burgoon $478 per month in child support when two children were minors, and $304 per month when one child was a minor. A trial was held in October 2018 on the issues of alimony, attorney fees, and the division of certain childcare expenses. Because Kavetskaya appeals only the district court's award of alimony, we recite only the facts relating to alimony.

At trial, both Kavetskaya and Burgoon testified regarding their employment and economic circumstances. They were married in Moscow in September 2001 and moved to Independence, Missouri, 3 months later. For the first 11 years of the marriage, Kavetskaya raised the couple's children and did not work outside the home. Kavetskaya testified that she had obtained a bachelor's degree in economics prior to the marriage and earned a master's degree in accounting during the marriage. In 2012, Kavetskaya accepted employment with the Department of Homeland Security (Department) in Lincoln, earning $40,000 per year. By the time she separated from Burgoon, Kavetskaya had been promoted several times and was earning more than $90,000 per year. However, she stated that it will be difficult for her to advance beyond her current position at the Department.

Burgoon testified that he graduated from high school in Independence and did not pursue any further education. He was employed at a warehouse in Missouri prior to his marriage and resumed that job after the couple returned to Missouri. Burgoon was the sole financial provider until Kavetskaya joined the Department in 2012, and his rate of pay was $14 per hour, but he was able to work overtime hours due to his seniority. Burgoon's income level remained consistent throughout the marriage, and he never held a job where he made more than $15 per hour.

After Kavetskaya moved to Lincoln, Burgoon remained in Missouri with the couple's eldest child, until he obtained employment at the Department in 2014. At the time of trial, Burgoon worked 40 hours per week making $14.06 per hour. The testimony revealed that Burgoon was not receiving Social Security benefits at the time of trial, and did not want to draw from his Social Security benefits until he was at least 66 years old, as he would be eligible to receive the maximum benefits at that age.

Burgoon testified that he was entitled to receive a portion of his Teamsters pension account when he turned 65 years of age; however, he expressed doubts on the viability of that account based on information he received about the insolvency of the local organization. Prior to the couple's separation, Kavetskaya and Burgoon owned a home valued at $300,000, but following the separation, Burgoon moved into a two-bedroom apartment in Lincoln.

Following trial, the district court ordered Kavetskaya to pay $700 per month in alimony for 8 years. She timely appealed.

## ASSIGNMENTS OF ERROR

Kavetskaya assigns that the district court abused its discretion in awarding alimony to Burgoon in the amount of $700 per month for 8 years.

STANDARD OF REVIEW

Domestic matters such as child support, alimony, and the child dependency exemption are entrusted to the discretion of trial courts. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015). An appellate court reviews a trial court's determinations on such issues de novo on the record to determine whether the trial judge abused his or her discretion. *Id*. Under this standard, an appellate court conducts its own appraisal of the record to determine whether the trial court's judgments are untenable such as to have denied justice. *Id*.

ANALYSIS

Kavetskaya argues that the district court abused its discretion by ordering her to pay Burgoon $700 per month for 8 years. She asserts that the amount and duration of the alimony is patently unfair. We disagree.

The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. Neb. Rev. Stat. § 42-365 (Reissue 2016). In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor in the custody of each party. *Wiedel v. Wiedel*, 300 Neb. 13, 911 N.W.2d 582 (2018). See, also, § 42-365. In addition, a court should consider the income and earning capacity of each party and the general equities of the situation. *Wiedel v. Wiedel, supra.*

In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Id*. The ultimate criterion is one of reasonableness. *Id*. An appellate court is not inclined to disturb the trial court's award of alimony unless it is patently unfair on the record. *Id*.

Here, after considering the alimony factors referenced above, we observe that Kavetskaya and Burgoon were married for 16 years. Two children were born during the marriage, both of whom were minors at the time the parties separated. The parents agreed to share physical and legal custody of the children. Additionally, Burgoon adopted Kavetskaya's daughter, who was born before the marriage. Burgoon worked throughout the marriage, while Kavetskaya did not work outside of the home for the first 11 years of the marriage. Thus, for more than half of the marriage, Burgoon was the sole financial provider for the family.

In 2012, Kavetskaya obtained employment at the Department, making $40,000 per year. At the time of her separation from Burgoon, Kavetskaya was earning more than $90,000 per year. Comparatively, Burgoon was earning $14.06 per hour at the time of the separation. Although alimony should not be used to equalize the incomes of the parties or punish one of the parties, disparity in income or potential income may partially justify an award of alimony. *Marcovitz v. Rogers*, 267 Neb. 456, 675 N.W.2d 132 (2004).

In addition to the disparity between Kavetskaya's income and Burgoon's, Burgoon has very limited earning capacity moving forward. At the time of trial, Burgoon was 64 years old, had only a high school education, and worked in a warehouse setting his entire career, never earning

more than $15 per hour. Additionally, while Burgoon was able to obtain overtime hours at his job in Missouri due to his seniority, there is no indication in the record that he is able to do so at his job with the Department. On the other hand, Kavetskaya was 39 years old, held a master's degree, and had steadily increased her salary during her career at the Department. Although Kavetskaya testified that it would be unlikely that she could advance beyond the position she currently held, she will be able to participate in the workforce as a desirable candidate for far longer than Burgoon.

Regarding the duration of the alimony award, the court ordered Kavetskaya to pay alimony for 8 years, half of the length of the marriage. Additionally, the couple's youngest child was born in 2009, therefore, in 8 years he will be nearing the age of majority in Nebraska. Thus, the court's award of alimony coincides with minority of the couple's children, over whom they share custody. Accordingly, competent evidence supports the district court's award of alimony.

In her appeal, Kavetskaya advances several arguments attempting to demonstrate that the court's award was an abuse of discretion. First, Kavetskaya seemingly argues that the financial positions of herself and Burgoon renders the alimony award unreasonable. Our review of the record reveals that Kavetskaya's monthly income, even when she contributes the maximum amount to her retirement savings, is $4,700, more than double Burgoon's monthly pay of $2,250.

Kavetskaya argues that the discrepancy between her and Burgoon's income will decrease because Burgoon will begin to receive Social Security benefits and will be able to draw from his Teamsters pension. However, Burgoon testified he did not want to draw from his Social Security benefits until he was at least 66 years old, the age when he would be eligible to receive the maximum benefits. Importantly, Burgoon did not testify that he *would* draw from his Social Security account at 66 years old, just that he would not do so until at least that age.

Likewise, although Kavetskaya asserts that Burgoon will be eligible to receive a portion of his Teamsters pension when he turned 65, Burgoon testified that he was unsure how viable his Teamsters pension was. When evidence is in conflict, an appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Bergmeier v. Bergmeier*, 296 Neb. 440, 894 N.W.2d 266 (2017). Accordingly, we are not persuaded that Burgoon's potential increase in income renders the district court's alimony award an abuse of discretion.

Kavetskaya also alleges that Burgoon's standard of living has not declined since their separation, and points out that Burgoon has money in his savings, and that under the property settlement he will receive a property equalization payment from her. We find that Kavetskaya's assertion is not supported by the record. Prior to their separation, Burgoon was living in a home valued at $300,000, yet after the separation he was living in a two-bedroom apartment. Therefore, in light of Burgoon's declined standard of living, the court's alimony award provides him with the means to partially recapture the standard of living he had prior to the parties' separation. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994) (alimony award which helped wife recapture standard of living she was accustomed to was not abuse of discretion).

Regarding Kavetskaya's argument that marital assets Burgoon received following the separation are a basis upon which to evaluate the alimony award, we note that while the statutory criteria for dividing property and awarding alimony overlap, the two serve different purposes and courts should consider them separately. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016).

The purpose of a property division is to distribute the marital assets equitably between the parties. *Id*. As iterated above, the purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in § 42-365 make it appropriate. *Wiedel v. Wiedel*, 300 Neb. 13, 911 N.W.2d 582 (2018).

Consequently, the assets Burgoon received as part of the property settlement do not render the district court's award of alimony an abuse of discretion. Thus, when considering the needs and relevant economic circumstances of the parties, the district court's award of alimony is not unreasonable. While Burgoon's income may potentially increase, it is not a certainty, and his standard of living declined after the separation.

Kavetskaya further asserts that she made substantial contributions to the marriage and to the care and education of the children. The record supports her argument, but it also indicates that Burgoon was the sole financial provider for the family during the first 11 years of the marriage, including while Kavetskaya earned her master's degree. He also supported himself and the couple's eldest child while Kavetskaya worked in Lincoln, and continued to work and support the family in Lincoln. Thus, we do not find that Kavetskaya's contributions to the marriage outweigh Burgoon's, nor do they indicate that the court's award of alimony was an abuse of discretion.

Upon our review of the record, the court did not abuse its discretion in ordering Kavetskaya to pay Burgoon alimony of $700 per month for 8 years. In light of the age discrepancy between the parties, their income disparity, and their contributions to the marriage, we find that the district court's alimony award is reasonable and not patently unfair.

## CONCLUSION

We find no abuse of discretion in the alimony award and affirm the decision of the district court.

AFFIRMED.